ATHENS COUNTY BOARD OF COMMISSIONERS, Appellant,

v.

SCHREGARDUS, Dir., Appellee.

[Cite as *Athens Cty. Bd. of Commrs. v. Schregardus* (1992), 83 Ohio App.3d 861.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–972.

Decided Nov. 24, 1992.

*Porter, Wright, Morris & Arthur, Anthony J. Celebrezze, Jr.,* and *Janet J. Henry;* and *Michael R. Huff,* for appellant.

*Lee Fisher,* Attorney General, *Bryan F. Zima* and *Susan E. Ashbrook,* Assistant Attorneys General, for appellee.

BOWMAN, Judge.

On June 24, 1988, the Ohio legislature enacted Am.Sub.H.B. No. 592 (142 Ohio Laws, Part III, 4418), implementing a new comprehensive state planning process to address Ohio's diminishing solid waste landfill capacity. The bill set up a framework which required every county in Ohio to form a solid waste management district and then directed each district to create solid waste management plans. The bill required county officials across the state to assume responsibility for completing an inventory of existing conditions and establishing plans and projections to ensure that solid waste disposal capacity would be available within their counties. Counties, especially those with small populations, were encouraged to join with other counties in order to increase each county's ability to meet the challenges of Am.Sub.H.B. No. 592.

The bill set up a structure to allow the counties time for three distinct major phases. First, the counties had to form districts, either singly or jointly with other counties. Then the districts had to develop plans which were to be submitted to the Ohio Environmental Protection Agency ("EPA"). After initial comments were received from the Ohio EPA, the districts then had to have the plans ratified by the local governments of the districts and, once the plans were so ratified, they were submitted to the Ohio EPA for final approval.

Pursuant to the first phase, the board of county commissioners of each county was either to establish a county solid waste management district on its own or, with the boards of county commissioners of one or more counties, establish a joint

solid waste management district. This was to be completed by March 24, 1989. Generally, a single-county district had to have a minimum population of one hundred twenty thousand people to remain a single district; however, there are exemptions from this requirement provided by statute. See R.C. 3734.52(C).

Appellant, Board of Commissioners of Athens County, had been actively involved in solid waste management activities for many years. Based on a successful history of regional cooperation in dealing with other comprehensive planning projects, Athens County took the lead in joining with neighboring counties, Galia, Hocking, Jackson, Meigs and Vinton, to create a joint solid waste management district. The joint district hired a staff and a consultant and then began drafting a solid waste management plan, which was submitted to the Ohio EPA in December 1990. The Ohio EPA returned preliminary comments to the joint district and the joint district revised the plan, established a public-comment period and held a public hearing as required by R.C. 3734.55. On August 22, 1991, the policy committee for the joint district met to review comments received by the public. Athens County had submitted written comments on the plan during the public-comment period and proposed amendments to the plan during the policy committee meeting; however, the policy committee did not accept any changes to the draft plan. The comments by Athens County referred to matters such as a fee structure to provide additional revenue for programs, a goal of a thirty-five percent reduction in solid waste, limitations on receipt of solid waste from outside the district, better use of existing facilities and a move to public ownership. The draft plan was adopted over the dissenting votes of every member of the policy committee who represented Athens County. The draft plan was then distributed to the appropriate legislative authorities for ratification; however, the draft plan did not receive affirmative resolutions from political subdivisions representing sixty percent of the joint district's population as required by R.C. 3734.55(B).

On September 24, 1991, Athens County adopted a resolution to withdraw from the joint district and to form a single-county solid waste management district. Because Athens County has a population of only 59,549, based on the 1990 Census, an exemption from the minimum population requirement was required in order for it to establish a single-county district. Such an exemption is available if certain criteria are met. On October 9, 1991, Athens County submitted its initial request for an exemption to the Ohio EPA. This request was supplemented with additional information on January 3, 1992.

On February 3, 1992, the Director of the Ohio EPA denied Athens County's request for a waiver of the population requirement. The director's decision was based on his interpretation of R.C. 3734.52(C)(1) and (2), which the director determined makes exemptions available only to those counties that have not yet

formed a single-county or joint-county district within the nine-month time frame provided by R.C. 3734.52(B). The director did not interpret the provisions to allow a county to withdraw from or join an existing district after the nine-month period required for district formation. Because Athens County's request was not timely filed before the joint district was formed, and within nine months from the effective date of Am.Sub.H.B. No. 592, the director denied Athens County's request.

On February 4, 1992, Athens County filed a notice of appeal with the Environmental Board of Review ("EBR"). The question presented to the EBR was whether a county that was originally a part of a duly created joint solid waste district could obtain an exemption and establish itself as a single-county solid waste management district and complete the planning process necessary to effectuate a withdrawal from the joint district before the Ohio EPA had approved an initial solid waste management plan for the entire joint district. The parties filed a joint stipulation of facts with the EBR and agreed to submit the issues of law to the EBR on written briefs and supporting affidavits.

On June 23, 1992, the EBR issued its findings of fact, conclusions of law and final order affirming the decision of the Director of the Ohio EPA and denying Athens County's request. Athens County now brings this appeal and asserts the following assignments of error:

"*First Assignment of Error*

"The EBR erred in concluding that an exemption request under ORC Section 3734.(C)(1) [*sic*] must be filed prior to the initial formation of a solid waste management district.

"*Second Assignment of Error*

"The EBR erred by failing to find that ORC Sections 343.01(B) and 3734.52(E) do not prohibit the reorganization of a solid waste management district at any time prior to the approval of an initial joint district solid waste management plan.

"*Third Assignment of Error*

"The EBR erred by failing to find that Ohio EPA's denial of a minimum population exemption for Athens County is inconsistent with prior actions of the director."

R.C. 3745.06 governs this court's standard of review in appeals from the EBR and provides that this court shall affirm the order complained of if we find that the order is supported by reliable, probative and substantial evidence and is in accordance with law. In the absence of such a finding, this court shall reverse, vacate or modify the order, or make such other ruling as is supported by reliable, probative and substantial evidence, and is in accordance with the law. In light of

this standard of review, this court will address Athens County's assignments of error.

In its first assignment of error, Athens County asserts that the EBR erred in concluding that an exemption request under R.C. 3734.52(C)(1) must be filed prior to the initial formation of a solid waste management district.

R.C. 3734.52 sets forth the procedures in which solid waste management plans were to be implemented and provided that, not later than March 24, 1989, the board of county commissioners of each county had to choose whether it was going to establish a county solid waste management district pursuant to R.C. Chapter 343, or whether the county was going to join with boards of county commissioners of one or more other counties and establish a joint solid waste management district pursuant to R.C. 3734.52(B). R.C. 3734.52(B) provides that each county and joint solid waste management district shall have a population of not less than one hundred twenty thousand people, unless an exemption has been granted pursuant to R.C. 3734.52(C)(1) or (2).

R.C. 3734.52(C) provides two separate schemes under which a board of county commissioners of a county with a population of fewer than one hundred twenty thousand people can proceed to get an exemption. R.C. 3734.52(C)(1) applies to counties with a population of less than one hundred twenty thousand people where solid waste facilities are available, or a firm agreement has been entered into that provided for solid waste disposal. R.C. 3734.52(C)(1) provides:

"The board of county commissioners of a county with a population of fewer than one hundred twenty thousand in which one or more solid waste facilities are located that have sufficient remaining capacity to dispose of all solid wastes generated within the county, or that has entered into a firm agreement that provides for the disposal of all solid wastes generated within the county whether within or outside the county or state, for a period of not less than ten years after June 24, 1988, may apply to the director for an exemption from the requirement under division (B) of this section that each district have a population of at least one hundred twenty thousand. The exemption application shall be accompanied by the board's certification and demonstration of access to sufficient solid waste management facility capacity to provide for the disposal of the solid wastes generated in the county during that ten-year period."

R.C. 3734.52(C)(2) applies to counties with a population of less than one hundred twenty thousand people that do not have sufficient solid waste management facility capacity within the county or access to sufficient capacity by contract. Pursuant to R.C. 3734.52(C)(2), the county had a deadline of not later than December 24, 1988 to submit to the Director of the Ohio EPA a statement of how the county will provide for sufficient solid waste facility capacity. R.C. 3734.52(C)(2) provides:

"The board of county commissioners of a county with a population of less than one hundred twenty thousand that does not have sufficient solid waste management facility capacity within the county or access to sufficient capacity by contract to make the demonstrations required by division (C)(1) of this section may, *not later than December 24, 1988,* submit to the director a statement of how the board will provide for sufficient solid waste facility capacity within the county or for access to sufficient solid waste management facility capacity to dispose of all solid wastes generated within the county during the subsequent ten-year period. The statement shall be accompanied by a study of the financial feasibility of the measures proposed in the statement that shall contain an inventory of all existing solid waste disposal, transfer, and resource recovery facilities and recycling activities in the county and estimates of the remaining capacity available at each such facility; estimates of the amounts of solid wastes that will be generated within the county during each year of the subsequent ten-year period; an identification of the additional solid waste management facilities and capacity the county intends to provide to dispose of those estimated amounts of solid wastes; and a schedule for implementation of the measures proposed in the statement and estimates of the capital and operating costs, and rates that will be charged to meet those costs, for those additional facilities, or contracts for access to solid waste management facility capacity, identified in the study. Within sixty days after receiving the statement and financial feasibility study from any such board of county commissioners, the director shall approve or disapprove the statement and study. The director shall approve such a statement and financial feasibility study only if they demonstrate a technically and economically feasible means of providing for the environmentally sound management of solid wastes generated in the county during the subsequent ten-year period. * * * " (Emphasis added.)

When this court is called on to give effect to an Act of the General Assembly, a standard of judicial restraint has developed when the wording of the enactment is clear and unambiguous. *Bernardini v. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 12 O.O.3d 1, 387 N.E.2d 1222. This court is required to look at the statute itself to determine the intent of the General Assembly and, if the intent is clearly expressed in the statute, the statute may not be enlarged or abridged. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630. In ascertaining the legislative intent of a statute, it is the duty of this court to give effect to the words used in the statute and not to delete words used, or to insert words that are not used. *Columbus–Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 49 O.O.2d 445, 254 N.E.2d 8.

With this in mind, this court finds that the obvious intent of the General Assembly is clearly discernable from the plain and simple language of R.C.

3734.52(C)(1) and (2). R.C. 3734.52(C)(1) does not contain an explicit deadline during which an exemption must be submitted, nor does it state that an exemption is available only for the purpose of the initial formation of solid waste management districts. By contrast, an explicit statutory deadline has been included in R.C. 3734.52(C)(2), thus limiting the availability of that exemption to a specific period of time. Had the General Assembly intended to limit the availability of the exemption contained in R.C. 3734.52(C)(1), it would have done so by writing a time deadline into the section as it did in R.C. 3734.52(C)(2). The fact that it did not do so is obvious, and it is not the prerogative of this court to insert words into the statute imposing such a restriction. See *Wheeling Steel Corp. v. Porterfield* (1970), 24 Ohio St.2d 24, 53 O.O.2d 13, 263 N.E.2d 249. Accordingly, this court finds that the EBR's interpretation of R.C. 3734.52(C)(1) is not supported by reliable, probative and substantial evidence and is not in accordance with law. Athens County's first assignment of error is sustained.

In its second assignment of error, Athens County asserts that the EBR erred in failing to find that R.C. 343.01(B) and 3734.52(E) do not prohibit the reorganization of a solid waste management district at any time prior to the approval of an initial joint district solid waste management plan.

R.C. 3734.52(E) provides:

"In addition to the requirements under Chapter 343. of the Revised Code, the following requirements govern the establishment of solid waste management districts, the joinder or withdrawal of counties to or from a joint district, and the union of joint districts, *when any of the districts involved are operating under a solid waste management plan* or amended plan approved or ordered to be implemented * * *." (Emphasis added.)

The statute then continues to set forth guidelines under which the establishment, withdrawal, joinder or union shall become final.

R.C. 343.01(B) provides:

" * * * A county may withdraw from a joint district by the adoption of a resolution by its board of county commissioners ordering withdrawal and upon submission to and approval by the director of the solid waste management plan or amended solid waste management plan of each county and joint district that results from the withdrawal under section 3734.55 or 3734.56 of the Revised Code. * * * "

In this case, Athens County has attempted to withdraw from the joint district during the initial planning process. The Ohio EPA asserts that it has consistently interpreted the framework of Am.Sub.H.B. No. 592 to prohibit counties from unilaterally withdrawing from a joint district late in the planning process. It also

asserts that its interpretation of the statutes it must implement is entitled to deference.

It is correct that the interpretation of a statute by an agency charged with its administration and its enforcement is entitled to due deference. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264. However, the agency's interpretation must be consistent with the plain language of the statute. See, for example, *Rings v. Nichols* (1983), 13 Ohio App.3d 257, 13 OBR 320, 468 N.E.2d 1123.

Neither R.C. 343.01(B) nor 3734.52(E) contains any language concerning a time frame in which the joining or withdrawal from a joint district can occur, although the statutes do indicate specific steps which must be taken before joinder or withdrawal may be approved by the Director of the Ohio EPA.

Athens County asserts that neither the Ohio EPA nor the EBR was required to decide whether it could withdraw from the joint district because, although it had passed a resolution required by R.C. 343.01(B), several additional steps were required before Athens County could effectuate its withdrawal, including the development, ratification and approval of a separate solid waste plant for Athens County, as well as the remainder of the joint district. The EBR agreed and, in its final order, stated:

" * * * Athens County does not meet the statutory requirements necessary to withdraw from the Joint District at the present time. Aside from the population issue, the Joint District itself is not yet operating under an approved solid waste management plan nor is it within the time period for the submittal of an amended plan as provided in 3734.52(E)(2)."

R.C. 343.01(B) and 3734.52(E) both permit withdrawal from a joint district. It is only after the joint district's plan has been approved or ordered to be implemented that the opportunity to withdraw is limited to the period during which the district plans must routinely be revised in order to limit any disruption in the development and implementation of the plans. Accordingly, the EBR's interpretation of R.C. 343.01(B) and 3734.52(E) is not supported by reliable, probative and substantial evidence and is not in accordance with the law as the statutes are written. Athens County's second assignment of error is sustained.

In its third assignment of error, Athens County asserts that the EBR erred when it failed to find that the Ohio EPA's denial of Athens County's minimum population exemption was inconsistent with prior actions of the Director of the Ohio EPA.

In light of our disposition of Athens County's first assignment of error, that the EBR erred in concluding that an exemption request under R.C. 3734.52(C)(1)

must be filed prior to the initial formation of a solid waste management district, this court need not address this assignment of error because it goes to the merits of Athens County's case.  On remand, the Ohio EPA must exercise its discretion and determine whether an exemption for Athens County is warranted.  Athens County's third assignment of error is overruled.

Based on the foregoing, Athens County's first and second assignments of error are sustained and Athens County's third assignment of error is overruled.  The order of the EBR is reversed and this cause is remanded to the Director of the Ohio EPA to rule on Athens County's application for exemption.

*Order reversed*
*and cause remanded.*

JOHN C. YOUNG, P.J., and McCORMAC, J., concur.