RAJAN, Appellant,

v.

STATE MEDICAL BOARD OF OHIO, Appellee.*

[Cite as *Rajan v. State Med. Bd. of Ohio* (1997), 118 Ohio App.3d 187.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No.–96APE07–914.

Decided Feb. 13, 1997.

---

* Reporter's Note: A discretionary appeal and cross-appeal to the Supreme Court of were not allowed in (1997), 79 Ohio St.3d 1449, 680 N.E.2d 1022.

*Schottenstein, Zox & Dunn, Kris M. Dawley* and *Edwin L. Skeens,* for appellant.

*Betty D. Montgomery,* Attorney General, *Lili C. Kaczmarek* and *James M. McGovern,* Assistant Attorneys General, for appellee.

TYACK, Presiding Judge.

On August 11, 1994, the State Medical Board of Ohio ("board") mailed a letter to Semur P. Rajan, M.D., notifying him that the board intended to determine

whether to take action against his certificate to practice medicine and surgery. The bases for the board's proposed action included allegations of inappropriate surgical care of a patient ("Patient 1") and the giving of inaccurate information in Patient 1's records. Dr. Rajan requested a hearing, and on February 22, February 23 and May 4, 1995, a hearing was held before a board hearing examiner.

On August 11, 1995, the hearing examiner filed a report and recommendation, which contained a detailed summary of the evidence presented, findings of facts, conclusions of law, and a proposed order. The hearing examiner concluded that Dr. Rajan violated R.C. 4731.22(B)(5) and (B)(6). In his proposed order, the hearing examiner recommended, among other things, that Dr. Rajan's certificate to practice medicine and surgery in Ohio be suspended for not less than one year.

Dr. Rajan filed objections to the report and recommendation with the board. On September 6, 1995, the board met and considered Dr. Rajan's case. The board, among other changes, amended the hearing examiner's proposed order, changing the recommended one-year suspension to a ninety-day suspension.

On September 22, 1995, Dr. Rajan appealed the board's order to the Franklin County Court of Common Pleas. On June 7, 1996, the trial court rendered its decision, finding that the board's order was supported by reliable, probative, and substantial evidence and was in accordance with law. A judgment entry was journalized on June 26, 1996.

Dr. Rajan ("appellant") has now appealed to this court, assigning four errors for our consideration:

"1. The Trial Court erred in affirming the Order of the State Medical Board (the 'Board') because the Board failed to comply with the voting procedure of R.C. 4731.22(B).

"2. The Trial Court erred in affirming the Order of the Board because Dr. Rajan's post-operative note did not constitute 'publishing a false, * * * deceptive or misleading statement' as that clause is used in R.C. 4731.22(B)(5).

"3. The Trial Court erred in affirming the Order of the Board because Dr. Rajan's post-operative note did not constitute '[a] departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances' as that clause is used in R.C. 4731.22(B)(6).

"4. The Trial Court erred in affirming the Order of the Board because Dr. Rajan's conduct during surgery was not '[a] departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances' as that clause is used in R.C. 4731.22(B)(6)."

■ In his first assignment of error, appellant contends that the board did not comply with the voting procedure set forth in R.C. 4731.22(B). The minutes from the September 6, 1995 board meeting indicate that the following occurred. Board member Dr. Bhati moved to amend the proposed order. Dr. Bhati's amendment included changing the one-year suspension and imposing merely a reprimand. A vote was taken on this motion to amend. Five board members voted in favor of, four voted against, and one member abstained from voting on, the motion. The minutes indicate that pursuant to this vote, the motion carried.

Dr. Buchan then moved to approve the hearing examiner's findings of fact, conclusions of law, and proposed order, as amended. Again, the vote was five in favor, four against, and one abstaining. The minutes then indicate the following:

"Lacking the statutorily requisite six affirmative votes, the motion failed."

The board then tabled the matter.

The matter was then removed from the table, and board member Dr. Agresta moved, among other things, to amend the proposed order by substituting a ninety-day suspension for the proposed one-year suspension. A vote was taken on this motion and seven members voted in favor of, one member voted against, and one member abstained from voting on, the motion. The motion carried. Board member Sinnot then moved to approve the hearing examiner's proposed findings of fact, conclusions of law, and order, as amended. The vote was seven in favor, one against, and one abstaining. The motion carried, and, therefore, appellant's certificate was suspended for ninety days.

Appellant contends that R.C. 4731.22(B) requires only that six members of the twelve-member board participate in voting on a proposed order to take action on a certificate. Appellant argues that the board erroneously interpreted R.C. 4731.22(B) as requiring six *affirmative* votes in order to take action on a certificate. Therefore, appellant contends that Dr. Buchan's motion to approve the proposed order, which as amended included merely a reprimand, actually had passed, since ten members voted on it.

R.C. 4731.22(B) states, in part:

"The board, pursuant to an adjudicatory hearing under Chapter 119. of the Revised Code and by a vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate, refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the following reasons[.]"

The board interpreted the above language to require six affirmative votes in order to limit, revoke, or suspend a license, or to reprimand the holder of a certificate. Because only five members voted in favor of a reprimand, the board

found that the motion failed. Subsequently, the motion to impose a ninety-day suspension passed after seven members voted in favor of it.

We begin our analysis by noting that the board, as set forth in R.C. 4731.01, consists of twelve members and that, under R.C. 4731.06, six members of the board constitute a quorum. At the September 6, 1995 hearing, ten members were present and participated in voting on the motion to impose a reprimand.

In support of his argument, appellant points to R.C. 4731.22(H), which states:

"Reinstatement of a certificate surrendered to the board requires *an affirmative vote* of not fewer than six members of the board." (Emphasis added.)

Appellant argues that because the legislature used the word "affirmative" in R.C. 4731.22(H) and not in R.C. 4731.22(B), it intended that six votes, not six affirmative votes, are needed to take action under R.C. 4731.22(B). However, it is a cardinal rule that a court must first look to the language of the statute itself to determine legislative intent. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461–462. If the language of the statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77, 80, citing *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213–214, 404 N.E.2d 159, 161–162, citing *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. Where a statute is found to be subject to various interpretations, however, a court may invoke rules of statutory construction in order to arrive at legislative intent. *Cline.*

The statute at issue here, R.C. 4731.22(B), is not so clear and definite that it could not be subject to various interpretations. Therefore, we will apply rules of statutory construction in order to arrive at legislative intent. In determining legislative intent, it is the duty of the court to give effect to the words used, not to delete or insert words. *Cline,* 61 Ohio St.3d at 97, 573 N.E.2d at 80–81. Words and phrases must be read in context and construed according to the rules of grammar and common usage. *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817, quoting R.C. 1.42. Utilizing these rules of statutory construction along with other principles of law, we find that the board correctly applied R.C. 4731.22(B).

The key phrase in R.C. 4731.22(B) is "[t]he board, * * * by a vote of not fewer than six members." The use of the word "a" above, modifying the singular word "vote," indicates that the legislature intended that one unit consisting of six of the same votes is needed in order to take action on a certificate. Appellant's interpretation may have been correct had the legislature, in contrast, used the words "the votes" instead of "a vote."

Further, when the remaining first paragraph of R.C. 4731.22(B) is read, it indicates that such a vote is necessary in order to take action against a certificate as opposed to *not* take action. It is reasonable to conclude that the legislature intended that six affirmative votes were necessary to limit, revoke, or suspend a certificate, or to reprimand or place on probation the holder of a certificate.

In addition, it makes sense logically to interpret R.C. 4731.22(B) this way. R.C. 4731.06 states that six members constitute a quorum. If appellant's construction was indeed correct, the legislature would not have had to say "by a vote of not fewer than six members" because R.C. 4731.06 requires at least six members to take any action.

Finally, the Supreme Court has held that courts must accord due deference to boards' interpretations of statutes governing themselves, since the legislature deemed them the proper forums to determine certain disputes. *Leon v. Ohio Bd. of Psychology* (1992), 63 Ohio St.3d 683, 687, 590 N.E.2d 1223, 1226; *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264. See, also, *Athens Cty. Bd. of Commrs. v. Schregardus* (1992), 83 Ohio App.3d 861, 868, 615 N.E.2d 1114, 1119–1120 (interpretation of a statute by an agency charged with its administration and enforcement is entitled to due deference; however, such interpretation must be consistent with the plain language of the statute). Because the board's interpretation of R.C. 4731.22(B) is consistent with the plain language of the statute, we must accord its interpretation due deference.

For all the reasons stated above, we hold that the trial court did not err in affirming the board's order as being in accordance with law.[1] The board correctly interpreted R.C. 4731.22(B) as requiring six affirmative votes in order to take certain action on a holder's certificate. Accordingly, appellant's first assignment of error is overruled.

Appellant's remaining assignments of error largely address factual issues, and, therefore, a brief background of the facts is warranted. Appellant is a general surgeon who at the time of the incident giving rise to this action had practiced for twenty-four years. Patient 1 suffered from symptomatic gallbladder disease with biliary colic. His condition is commonly referred to as "gallstones." In 1990, the year of the surgery, the treatment for gallstones was cholecystectomy—removal

---

1. While the issue of the number of votes necessary under R.C. 4731.22(B) was not at issue, we also point to the Supreme Court case of *Brost v. Ohio State Med. Bd.* (1991), 62 Ohio St.3d 218, 581 N.E.2d 515. In that case, the board voted to revoke a certificate, with six voting in favor, two voting against, and one abstaining. In *Brost*, the Supreme Court stated, "[B]y the *requisite* vote of six members, the board adopted, without qualification, the hearing examiner's report." (Emphasis added.) *Id.* at 220, 581 N.E.2d at 518. This statement supports the board's interpretation here of R.C. 4731.22(B).

of the gallbladder. This was done either laparoscopically or in an open proce-
dure. Patient 1 consented to a laparoscopic procedure. The surgery was
performed on December 11, 1990.

Prior to the surgery, appellant had performed five hundred to six hundred·
open cholecystectomies and twenty cholecystectomies laparoscopically. During
the surgery, appellant retracted the gallbladder straight up rather than up and
laterally. The latter method, according to the state's expert, Edwin C. Ellison,
M.D., is the proper method. Because appellant did not use the proper method,
he did not see the cystic duct, which must be clipped and divided during a
cholecystectomy. Therefore, appellant was looking in the wrong place and cut
the common bile duct. While an injury to the bile duct is a recognized
complication of laparoscopic cholecystectomy, appellant failed to recognize the
injury.

The next step in a cholecystectomy is to clip and divide the cystic artery.
However, appellant was in the wrong place and instead entered the portal vein
and the right hepatic artery. Eventually, appellant divided the cystic artery and
used a laser to separate the gallbladder from the liver. About two minutes later,
excessive bleeding began, and appellant attempted to control this with the laser.
Approximately thirteen minutes later, very serious bleeding began, and appellant
attempted to apply a clip to stop the bleeding. Approximately nine minutes later,
Patient 1 was still bleeding, and appellant began to convert to an open procedure.

On December 17, 1990, Patient 1 died from shock and multisystem organ
failure. Appellant admitted at the hearing that his mistakes during the surgery
resulted in Patient 1's death.

Appellant's remaining assignments of error, for the most part, set forth factual
issues. The standard of review in appeals from board orders is well established.
In *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748,
750–751, the Supreme Court stated that while it is incumbent upon a reviewing
trial court to examine the evidence in determining whether the board's order is
supported by reliable, probative, and substantial evidence and is in accordance
with law, this is not the function of the appellate court. The appellate court
determines only if the trial court abused its discretion, an abuse of discretion
being not merely an error of judgment, but a perversity of will, passion,
prejudice, or moral delinquency. *Id.*

In his second assignment of error, appellant contends that the board
erred in affirming the board's order because his postoperative note did not violate
R.C. 4731.22(B)(5). R.C. 4731.22(B)(5) lists as· a reason for taking action against
a certificate "publishing a false, fraudulent, deceptive, or misleading statement."
The hearing examiner found that appellant's postoperative note stated that there

were "extensive varicosities on the surface of the liver due to probably portal hypertension secondary to ethanol intake." The hearing examiner further found that the evidence supported a finding that there actually were no varicosities or portal hypertension. The hearing examiner concluded that appellant's postoperative diagnosis contained in the note was, at the very least, false, deceptive, and misleading.

Appellant argues that in order for a statement to constitute a violation under R.C. 4731.22(B)(5), there must be evidence of intent to deceive or the probability that others will be deceived. Appellant also contends that there was no evidence of a misrepresentation of fact or a reasonable probability that others would be deceived. R.C. 4731.22(B)(5) defines a false, fraudulent, deceptive, or misleading statement as:

"[A] statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived."

The hearing examiner found that while appellant testified that there were varicosities, other evidence such as the autopsy report and Dr. Ellison's testimony indicated otherwise. Contrary to appellant's postoperative note, therefore, the board found that there were no varicosities or portal hypertension. Hence, the board found that the postoperative note contained, at the very least, a misrepresentation of fact.

The hearing examiner also concluded that it was not necessary to prove an intent to deceive in order to prove a violation of R.C. 4731.22(B)(5). On appeal here, the board cites *Singer v. State Med. Bd. of Ohio* (Sept. 26, 1991), Franklin App. No. 90AP–1204, unreported, 1991 WL 224968, jurisdictional motion overruled in (1992), 63 Ohio St.3d 1409, 585 N.E.2d 834, in support of the argument that proof of intent is unnecessary. In *Singer,* this court stated that it is unnecessary to establish an intent to defraud or misrepresent in order to find a violation of R.C. 4731.22. *Id.* at 8. However, in a reported opinion from this court, we found that the trial court abused its discretion in affirming a board order that found a physician violated R.C. 4731.22(A) when, although some statements in the physician's application for licensure were technically inaccurate, there was not sufficient evidence that such statements were made with an intent to mislead the medical board. *In re Wolfe* (1992), 82 Ohio App.3d 675, 687–688, 612 N.E.2d 1307, 1315–1316. While *In re Wolfe* involved an alleged violation of R.C. 4731.22(A), we believe that the same proof with regard to intent is required under R.C. 4731.22(B)(5) in this case.

The hearing examiner, in his findings of fact, focused on what the evidence indicated regarding whether appellant's postoperative note was correct. The hearing examiner made no findings or conclusions with regard to any evidence or lack of evidence as to appellant's intent to deceive or misrepresent. However, in his summary of the evidence, the hearing examiner noted that Dr. Ellison testified that he believed appellant did not intentionally state anything untrue in the postoperative note. In addition, the hearing examiner noted that appellant testified that at the time he dictated the report, he believed that it was accurate, and he had no intent to deceive.

As indicated earlier, the hearing examiner concluded that intent need not be shown. We find this conclusion erroneous and, instead, follow the analysis set forth in *Wolfe, supra.* Hence, the board, in adopting the hearing examiner's conclusions, applied an incorrect legal standard with regard to whether or not appellant violated R.C. 4731.22(B)(5). There is no evidence that appellant intended to deceive or misrepresent the facts. Therefore, it was erroneous to conclude that appellant violated R.C. 4731.22(B)(5). Accordingly, the trial court erred in affirming the portion of the board's order finding that appellant violated R.C. 4731.22(B)(5). For these reasons, appellant's second assignment of error is sustained.

■ Appellant's third and fourth assignments of error are interrelated and, therefore, will be addressed together. Appellant contends that the trial court erred in affirming the board's order finding that, pursuant to R.C. 4731.22(B)(6), appellant's conduct during surgery and with regard to his postoperative note departed from or failed to conform to minimal standards of care. R.C. 4731.22(B)(6) lists another reason for taking action on a certificate:

"(a) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.]"

As to the surgery, the hearing examiner found numerous departures from and/or failures to conform to minimal standards of care. As an example, the hearing examiner found that appellant retracted Patient 1's gallbladder improperly and, as a result, erroneously clipped and divided the common bile duct and not the cystic duct. Because appellant misidentified the common bile duct, he was working in the wrong area for part of the surgery. Appellant should have recognized the injury to the common bile duct and repaired it. The hearing examiner further found that convincing evidence showed that when presented with excessive bleeding, as in Patient 1's case, the laparoscopic procedure should be discontinued and an open procedure should be performed. However, even when the bleeding became worse, appellant continued to attempt to control the

bleeding without opening the patient. Further, the hearing examiner found that appellant failed to accurately document the surgery and its complications.

For all of the above and other enumerated reasons, the hearing examiner and board concluded that appellant's conduct departed from or failed to conform with minimum standards of care. We find that the trial court did not abuse its discretion in finding reliable, substantial, and probative evidence in support of the board's finding.

Appellant argues that the trial court applied an improper standard in assessing his conduct during surgery. Appellant points to one sentence in the trial court's decision in support of his argument. During a thorough discussion of the evidence, the trial court stated:

"First of all, even if comparing an open cholecystectomy to a laparoscopic one is like comparing apples to oranges, as Appellant claims, there is, as Dr. Ellison explained, one standard that exists for both: you don't let the patient bleed to death."

Appellant contends that this is an inappropriate standard because it focuses on the results, not the reasonableness of appellant's efforts. However, this was not the standard used by the trial court. Rather, the trial court examined the evidence and found that the board's order was supported by reliable, probative, and substantial evidence. The trial court was merely giving one example of the evidence that showed that appellant fell below the minimum standard of care.

Appellant sets forth various other arguments in support of his contention that he did not fall below the minimum standard of care. For example, appellant points out that there was testimony regarding the difficulty of this particular surgery due to several anatomical anomalies. Appellant cites testimony by his expert, John A. Matyas, M.D., indicating that retracting the gallbladder during this procedure was new in 1990 and that retracting the gallbladder laterally was not standard practice in 1990. Appellant also contends that the evidence shows that his failure to recognize the injury to the common bile duct was not a departure from the minimum standards of care because the injury was a result of anatomical anomalies and such an injury was within acceptable standards. In addition, appellant argues that there was not reliable, probative, and substantial evidence demonstrating that he violated minimum standards of care by failing to open the patient earlier.

Appellant makes other arguments regarding the evidence in this case. We recognize that this was a difficult surgery. The record in this case includes numerous medical documents, a video recording of the actual surgery, and the testimony of appellant and two expert witnesses. Differences of opinion occurred; however, both experts testified as to shortcomings on the part of appellant. The board is largely made up of physicians who have the expertise to

decide factual issues. It is not within our province to second-guess the board. Indeed, the purpose of the General Assembly in providing for administrative hearings in particular fields is to facilitate matters by placing the decision as to facts on boards composed of people who have the necessary knowledge and experience pertaining to a particular field. *Pons*, 66 Ohio St.3d at 621–622, 614 N.E.2d at 750–751, quoting *Arlen v. State* (1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 193–194, 399 N.E.2d 1251, 1254–1255:

A majority of the board possesses the specialized knowledge needed to determine the acceptable standard of general medical practice and is quite capable of determining when conduct falls below the minimum standard of care. *Pons*, 66 Ohio St.3d at 623, 614 N.E.2d at 751–752. The minutes from the board hearing contain detailed discussions between the board members on what occurred during this surgery and whether errors were made. We must give due deference to such expertise, and, given the record in this case, it is not within our province to reverse the board's order. In addition, as appellant's conduct regarding his postoperative diagnosis was inextricably related to his conduct during surgery, we again defer to the board's conclusion that such conduct also fell below the minimum standard of care as set forth in R.C. 4731.22(B)(6).

Here, the board found for various reasons that appellant's conduct during surgery fell below the minimum standard of care. A patient died as a result of appellant's conduct. Appellant's certificate was suspended for ninety days. On appeal to this court, appellant in large part attempts to argue his case again. The board decided the issues, and the trial court found that the board's order was supported by reliable, probative, and substantial evidence and was in accordance with law. In our limited review, we cannot find that the trial court abused its discretion in finding reliable, substantial, and probative evidence to support the board's conclusion that appellant violated R.C. 4731.22(B)(6). Accordingly, appellant's third and fourth assignments of error are overruled.

In summary, appellant's first, third, and fourth assignments of error are overruled. Appellant's second assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to the trial court with instructions to remand to the board for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded*
*with instructions.*

LAZARUS, J., concurs.

CLOSE, J., concurs in part and dissents in part.

CLOSE, Judge, concurring in part and dissenting in part.

I concur with the majority opinion with the exception of the analysis of the first assignment of error. Because I agree with appellant's argument, I would sustain the first assignment of error and remand to the board for imposition of penalty consistent with the original vote taken.

In short, R.C. 4731.06 states that six members constitute a quorum. The language "by a vote of not fewer than six members," pursuant to R.C. 4731.22(B), guarantees not only that the board have a quorum but that, if there is an abstention, discipline cannot be decided by a vote taken by fewer than six members.

I would hold that R.C. 4731.06, requiring six members to constitute a quorum, is supplemented by R.C. 4731.22(B), and that its requirement of by "a vote of not fewer than six members" means merely that, in addition to having the quorum, six members must vote on the action. I believe that this is further illustrated by R.C. 4731.22(H), which requires "an affirmative vote of not fewer than six members," in some cases. The legislature could have said six affirmative votes in R.C. 4731.22(B) if that is what it meant.

I would sustain the first assignment of error.