OPINION
{¶ 1} Appellant, Robert A. Graor, M.D., appeals from the January 7, 2004 decision and entry of the Franklin County Court of Common Pleas affirming the February 13, 2003, order of appellee, Ohio State Medical Board ("the Board"), permanently revoking appellant's license to practice medicine. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On July 10, 2002, the Board notified appellant of its intention to determine whether or not to take disciplinary action against his medical license based upon allegations he violated R.C. 4731.22(B)(5). Specifically, the Board alleged appellant misrepresented his credentials by claiming he was board certified in internal medicine.
 {¶ 3} An evidentiary hearing was held on December 3 and 4, 2002. The evidence presented consists of the following. In August 1981, appellant completed the internal medicine board examination and was awaiting his results. Thereafter, appellant was hired as a staff physician at the Cleveland Clinic. Appellant completed various forms for the Cleveland Clinic in preparation for his new position, including a biography. The biography asked if he was board[1] certified, to which appellant testified he answered in the affirmative. Thereafter, appellant learned he did not pass the board examination. As a result, his biography contained the notation "Failed Exam 1981."
 {¶ 4} Appellant began his new position in January 1982. Before the correction could be made to his board results in his biography, appellant testified that the secretaries in his department created his first curriculum vitae ("CV") from the tainted biography form. Appellant testified that he never personally submitted a CV to the Cleveland Clinic. Appellant averred that the secretaries in his department created CV for the staff physicians. The Cleveland Clinic maintained a copy of appellant's CV on computer, and the CV was saved on a disc for him when he left. Appellant testified that he never used or reviewed this CV.
 {¶ 5} The Cleveland Clinic also maintained a second submission of appellant's CV. Under the heading "certification," the CV states "American Board of Internal Medicine-National Board of Medical Examiners, 1982." (State's Exhibit No. 3.) Appellant denied that the second CV states he was ABIM certified, and stated that he "does not believe" he created the CV. (Tr. at 251.)
 {¶ 6} In 1993 and 1994, appellant was involved in research and obtained funds for research. During that time, appellant was alleged to have embezzled a total of $1,066,709 from his research account at Cleveland Clinic. In December 1994, appellant was indicted for this activity and found guilty of five felony counts of theft and five felony counts of aggravated grand theft by the Cuyahoga County Court of Common Pleas. Appellant left his employment with the Cleveland Clinic in September 1994. In 1995, the Board revoked appellant's license to practice medicine as a result of these convictions, but stayed the revocation and ordered a suspension of appellant's license for no less than five years.
 {¶ 7} Appellant testified that he did not practice medicine during his suspension. However, a liability insurance application submitted by the Board indicated that he practiced medicine in New Mexico from 1996 through 1999.
 {¶ 8} In 1999, Mr. Jeff Shutte, Dr. Salim Dahdah, his wife Cindy Dahdah, appellant and his wife attended a dinner meeting related to appellant's potential employment with the Ohio Institute of Cardiac Care ("OICC") in Springfield, Ohio. Dr. Dahdah was the sole shareholder of OICC. Mr. Shutte, an employee of OICC, testified that he asked appellant if he was ABIM certified, to which Mr. Shutte testified that appellant responded in the affirmative. Mrs. Dadah, who also attended the meeting, testified that appellant unequivocally stated he was certified by the ABIM. Conversely, appellant testified that Dr. Dahdah and he frequently discussed the fact that he was not ABIM certified, and his plans for registering to take the Board examination.
 {¶ 9} In early 2000, appellant was hired by Dr. Dahdah, and his license to practice medicine was reinstated. Thereafter, Mrs. Dahdah received a copy of appellant's CV from Dr. Dahdah, indicating appellant was ABIM certified. Appellant testified that without a prior viewing of its contents, he "possibly" gave Mr. Shutte the computer disc from the Cleveland Clinic with the contaminated CV. (Tr. at 266.) However, appellant denied submitting his CV to OICC, and testified that the Dr. Dahdah may have obtained the CV sometime between 1990 and 1993, when Dr. Dahdah was trying to recruit him to join his practice. The CV included dates through 1995, the year after appellant was terminated from Cleveland Clinic. Mrs. Dahdah asked appellant to submit a second CV because the first CV had an incorrect home address. Under the category "certification," the second CV also indicated that appellant was ABIM certified. (State's Exhibit No. 5.) Again, appellant denied ever submitting his CV to OICC.
 {¶ 10} In 2000, an application for premises liability insurance was filed on appellant's behalf. (State's Exhibit No. 6.) Appellant testified that his secretary completed portions of the premises liability insurance application, and he completed other portions. On the same line where the secretary wrote that he was ABIM certified, appellant added the date of 1982. Appellant explained that he had done so to indicate that he was board eligible in 1982, then later admitted he was actually board eligible in 1981.
 {¶ 11} Appellant also applied for privileges at Good Samaritan Hospital. (State's Exhibit No. 7.) In the application, appellant indicated he was ABIM certified. Directly below this answer, appellant answered "yes" to a question asking, "if not certified, are you currently eligible or qualified to sit for the board examination in your discipline." Appellant received privileges at Good Samaritan, but these privileges were revoked after the hospital learned of his false representations on his application.
 {¶ 12} In February 2000, appellant applied for a clinical faculty appointment at Wright State University. This application also indicated appellant was ABIM certified. A CV attached to the application also stated that appellant was ABIM certified. Appellant denied submitting the CV, and stated he was unaware of the misinformation until a Wright State employee advised appellant that his clinical faculty appointment application stated he was ABIM certified. Upon receiving this information, appellant testified that he clarified his Board status with Dr. Dahdah's office and Good Samaritan Hospital. Mr. Shutte spoke with appellant, who indicated that he had been ABIM certified but had lost his certification because of his felony convictions. Mr. Shutte contacted the ABIM and was told that appellant took the examination in 1981, failed, and appellant has never been ABIM certified.
 {¶ 13} On January 17, 2003, the hearing examiner filed her Report and Recommendation ("Report"), which proposed appellant's medical license should be permanently revoked.
 {¶ 14} Appellant filed objections to the Report. On February 12, 2003, the Board met to consider the Report and appellant's objections. After consideration of the Report and objections, the Board permanently revoked appellant's license to practice medicine.
 {¶ 15} On February 18, 2003, appellant appealed the Board's decision to the Franklin County Court of Common Pleas, pursuant to R.C. 119.12. On January 7, 2004, the trial court affirmed the decision of the Board. In its decision, the trial court recognized that at the time appellant was accused of submitting a false CV to the Cleveland Clinic in 1981, there was no prohibition against false statements under R.C. 4731.22. As such, the court determined that, to the extent the Board's order found the 1981 submission violated R.C. 4731.22, the order was not in accordance with the law.
 {¶ 16} Nevertheless, the court found "overwhelming evidence" was presented to demonstrate appellant violated R.C. 4731.22 on several occasions since his 1995 stayed revocation. Specifically, the court found that reliable, probative, and substantial evidence existed to support that appellant submitted a CV to OICC misrepresenting that he was ABIM certified. The court found that appellant lied to Mr. Shutte about his credentials at the dinner meeting, and lied again when he indicated he was ABIM certified, and the certification was rescinded after his felony convictions. Further, the court determined that reliable, probative, and substantial evidence existed that appellant provided false information on his applications for premises liability insurance, privileges at Good Samaritan Hospital, and his clinical faculty appointment at Wright State University. Finally, the court found that appellant acted with intent to mislead and provide false information regarding his credentials. As such, the court did not modify the Board's order with regard to the permanent revocation of appellant's license. (January 7, 2004 Decision, 11-15.)
 {¶ 17} Appellant timely appeals and asserts the following assignments of error[2] for our review:
I. The trial court erred in affirming the state medical board of ohio's order permanently revoking dr. graor's medical license, which was not supported by reliable, probative and substantial evidence and was not in accordance with the law.
II. The trial court erred by refusing to modify the penalty assessed by the board or to remand this case back to the board in light of its holding that certain portions of the board's findings were not in accordance with the law.
III. The trial court erred in refusing to modify the penalty assessed by the board or to remand this case back to the board in light of evidence that the penalty assessed upon Dr. Graor is disproportionate to the offense and inconsistent with prior board rulings.
IV. The trial court erred by refusing to modify the penalty assessed or to remand this case back to the board in light of the board's failure to consider mitigating factors.
 {¶ 18} Under R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record and determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with the law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111, 17 O.O.3d 65, 407 N.E.2d 1265.
 {¶ 19} In Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303, the Supreme Court of Ohio defined the evidence required by R.C. 119.12: "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. "Substantial" evidence is evidence with some weight; it must have importance and value.
 {¶ 20} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" (Emphasis sic.) Lies v. Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting Andrews v.Bd. Of Liquor Control (1955), 164 Ohio St. 275, 280, 58 O.O. 51,131 N.E.2d 390. Even though the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive. Conrad, supra, at 111.
 {¶ 21} An appellate court's standard of review in an administrative appeal is even more limited than that of a common pleas court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621, 1993 Ohio 122, 614 N.E.2d 748. In Pons, the Supreme Court of Ohio stated:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id., citing Lorain City School Dist. Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 260-261,533 N.E.2d 264. (Emphasis sic.) Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal. Big Bob's, Inc. v. Ohio Liquor Control Comm.,151 Ohio App.3d 498, 2003-Ohio-418, 784 N.E.2d 753, at ¶ 15. Therefore, we must also determine whether the common pleas court's decision is in accordance with law.
 {¶ 22} In his first assignment of error, appellant argues that the Board's order was not supported by reliable, probative, and substantial evidence and that the trial court erred in affirming the Board's decision to permanently revoke his license to practice medicine. In this case, the board determined that appellant violated R.C. 4731.22(B)(5), which states:
(B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
* * *
(5) Making a false, fraudulent, deceptive, or misleading statement in the solicitation of or advertising for patients; in relation to the practice of medicine and surgery, osteopathic medicine and surgery, podiatric medicine and surgery, or a limited branch of medicine; or in securing or attempting to secure any certificate to practice or certificate of registration issued by the board.
Appellant admits that misstatements were made regarding his ABIM status. Nonetheless, appellant argues that he cannot lose his medical license unless the Board found that appellant made those statements, and that he acted with intent to deceive. Appellant contends that the Board offered no evidence to rebut appellant's explanation of the events, and adopted their own speculative version of what could have transpired. Appellant cites to various findings of fact in the record, arguing that only administrative staff have ever prepared or submitted the misinformation in his CV. As such, appellant argues that the Board cannot prove he intended to make any misstatements in his CV. Appellant asserts that Rajan v. State Med. Bd. of Ohio
(1997), 118 Ohio App.3d 187, 692 N.E.2d 238, discretionary appeal not allowed, 79 Ohio St.3d 1449, 680 N.E.2d 1022, and Webb v.State Med. Bd. of Ohio (2001), 146 Ohio App.3d 621,767 N.E.2d 782, support his position.
 {¶ 23} The Board argues contra that the evidence submitted supports that in many instances, appellant falsely indicated that he had ABIM certification. The Board contends that the hearing examiner addressed appellant's credibility and found many statements to support her conclusion that appellant intended to misrepresent his Board status.
 {¶ 24} The issue before this court is to determine whether the trial court abused its discretion in affirming the Board's decision to permanently revoke appellant's license to practice medicine in Ohio. For the following reasons, we hold that the trial court did not abuse its discretion.
 {¶ 25} The Board reviewed exhibits presented by the State and appellant, along with testimony from the hearing. At appellant's evidentiary hearing, the State's witnesses included employees of OICC, a government investigator and representative from the ABIM. Appellant testified on his own behalf, and presented testimony from several witnesses who spoke of his good character and skill as a physician. The hearing examiner determined that appellant's testimony that he was not responsible for the misinformation lacked credibility, and the evidence was sufficient to support a conclusion that appellant intended to misrepresent his ABIM certification.
 {¶ 26} The trial court did consider the evidence in arriving at the judgment that it entered affirming the order of the Board. The court gave a rational analysis of its finding that there was reliable, probative, and substantial evidence supporting the Board's findings of the violations with which appellant was charged. The record shows that the findings of the trial court primarily depended upon the credibility of witnesses. For example, Mr. Shutte and Mrs. Dahdah testified that appellant had falsely represented himself to be ABIM certified during a dinner meeting regarding his position at OICC. Further, Mr. Shutte testified that after learning that appellant was not ABIM certified, appellant told him that he had been ABIM certified but had lost his certification because of his felony convictions. Appellant testified that he was unaware of the misinformation contained in his CV, and argued that this information was generated or submitted by administrative staff. However, appellant's explanation was an issue of fact to be resolved by the Board and its hearing examiner who had an opportunity to observe the witnesses as they testified. We see no basis for the trial court to make a contrary finding. Thus, the trial court did not abuse its discretion and we may not substitute our judgment for that of the Board or the trial court. Appellant's testimony and rationalizations were not found to be credible.
 {¶ 27} Moreover, appellant's reliance on Rajan and Webb
are misplaced. In Rajan, we found that the hearing examiner failed to make findings of fact with regard to any evidence that the appellant acted with the intent to deceive or mislead. InWebb, we found that there was a finding by the hearing examiner that the appellant's misrepresentations to the Board were unintentional. Rajan and Webb are distinguishable from the instant case. Appellant's intent may be inferred from the surrounding circumstances. Hayes v. State Med. Bd. (2000),138 Ohio App.3d 762, 770, 742 N.E.2d 238. We find the hearing officer's analysis in her Report cites to specific facts which support a conclusion that appellant intended to misrepresent his ABIM status.
 {¶ 28} The trial court is bound to uphold the order of the Board if it is supported by reliable, probative, and substantial evidence and is in accordance with the law. In this case, we find the trial court did not abuse its discretion in determining that the Board's order is supported by reliable, probative, and substantial evidence and is in accordance with the law. Accordingly, appellant's first assignment of error is overruled.
 {¶ 29} In his second assignment of error, appellant argues that the trial court erred by refusing to modify the permanent revocation of appellant's medical license, or to remand this case back to the Board, in light of its holding that certain portions of the Board's findings were not in accordance with the law. Because the court found that appellant's representations to Cleveland Clinic in 1981 did not violate R.C. 4731.22, appellant argues the Board's reliance on this evidence requires modification of the Board's order. At an absolute minimum, appellant argues this case should be remanded back to the Board to reevaluate without the Board's consideration of this evidence.
 {¶ 30} The Board argues contra that the trial court's order also indicates there was "overwhelming evidence that [appellant violated] R.C. 4731.22 on several occasions since his 1995 revocation," and there is no basis to modify the Board's order. (January 7, 2004 Decision at 15.) In support of its position, the Board cites Landefeld, M.D. v. State Med. Bd. (June 15, 2000), Franklin App. No. 99AP-612, 2000 Ohio App. LEXIS 2556, at *18, stay granted, 89 Ohio St.3d 1440, 731 N.E.2d 686, cause dismissed, 89 Ohio St.3d 1474, 733 N.E.2d 249, in which we found "pursuant to R.C. 4731.22(B), the board may revoke a individual's certificate to practice for `one or more' of the enumerated reasons and thus, in a given case, the trial court would only need to find substantial, reliable and probative evidence supporting one ground for revocation in order to uphold the board's order."
 {¶ 31} We agree with the Board's position. In accordance withLandefeld, we find the trial court did not abuse its discretion by refusing to modify the Board's penalty, as there was evidence of additional violations of R.C. 4731.22(B)(5) that occurred after appellant's 1995 stayed revocation of his medical license. Appellant's second assignment of error is overruled.
 {¶ 32} Appellant's remaining assignments of error will be addressed out of order. In his fourth assignment of error, appellant argues that the Board refused to consider mitigating factors in its decision to revoke appellant's license. Appellant presented evidence of his character and his skill as a physician. Appellant contends that the Board did not consider this evidence, and the trial court's failure to consider this evidence constitutes an abuse of discretion. We disagree.
 {¶ 33} In Urban v. State Med. Bd., Franklin App. No. 03AP-426, 2004-Ohio-104, we found that the Board "may consider aggravating and mitigating circumstances in deciding what penalty to impose." Id. at ¶ 17, citing State Medical Board of Ohio, Disciplinary Guidelines, Appendix B: Aggravating and Mitigating Factors. (Emphasis added.) Here, the report and recommendation of the hearing examiner acknowledged that she heard testimony from appellant, and the witnesses who spoke on his behalf. In affirming the Board's decision, the trial court indicated that it completed a "thorough review of the entire record." (January 17, 2004 Decision at 11.) Accordingly, we find that the trial court did not abuse its discretion in concluding that the order of the Board was supported by reliable, probative, and substantial evidence and was otherwise in accordance with the law. As such, appellant's fourth assignment of error is overruled.
 {¶ 34} In his third assignment of error, appellant argues that the trial court erred in refusing to modify the penalty assessed by the Board or remand this case back to the Board. Appellant contests that evidence had been presented that the permanent revocation of appellant's license is disproportionate to the offense and inconsistent with prior Board rulings. In support of his position, appellant submitted a summary of the Board's recent cases in which a physician's license was permanently revoked. Appellant maintains that the offenses in the summary were much more serious than those against appellant. Further, appellant submitted a summary of cases where the Board imposed less serious penalties for more serious offenses.
 {¶ 35} In Urban, we recently considered whether or not an order permanently revoking the appellant's license to practice medicine for a violation of R.C. 4731.22(B)(5) was disproportionate to sanctions in other cases, and whether or not the trial court erred in not modifying the Board's sanction. In affirming, we found that once reliable, probative, and substantial evidence is found to support an order by the Board, the reviewing court may not modify a sanction authorized by R.C.4731.22(B)(5). Urban at ¶ 22, citing Henry's Cafe, Inc. v. Bd.of Liquor Control (1959), 170 Ohio St. 233, 163 N.E.2d 678. The Board has the right to permanently revoke appellant's license if the circumstances merit permanent revocation. Id., citingBouquett v. Ohio State Med. Bd. (1997), 123 Ohio App.3d 466,472-473, 704 N.E.2d 583; Roy v. Ohio State Med. Bd. (1995),101 Ohio App.3d 352, 655 N.E.2d 771.
 {¶ 36} In keeping with this precedent, we decline to modify the sanction imposed by the Board. R.C. 4731.22(B) clearly provides for the possible penalty of license revocation for the infractions with which appellant was found to have violated, and, accordingly, this sanction will not be disturbed by this court. As such, appellant's third assignment of error is overruled.
 {¶ 37} Based on the foregoing, appellant's first, second, third and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed
Judgment affirmed.
Petree, and Klatt, JJ., concur.
[1] The American Board of Internal Medicine ("ABIM") certifies physicians in the specialties of internal medicine and its subspecialties, including cardiology.
[2] Although he does not set forth assignments of error, appellant presented a statement of issues for our review, which we interpret to be, and refer to as, his assignments of error.