OPINION
{¶ 1} Appellant, Dannie K. Gipe, Jr., M.D., appeals from the judgment of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio ("Board"), permanently denying appellant's application to practice medicine and surgery. For the reasons that follow, we affirm.
 {¶ 2} The Board's denial of appellant's application for licensure stems from appellant's answers in his application and a felony conviction for drug possession. On September 12, 2001, the Board provided appellant notice that his conduct constituted violations of the following statutes:
 {¶ 3} R.C. 4731.22(A) (committing "fraud, misrepresentation, or deception in applying for or securing any license or certificate issued by the board"); R.C. 4731.22(B)(5) ([m]aking a false, fraudulent, deceptive, or misleading statement * * * in securing or attempting to secure any certificate to practice"; R.C. 4731.22(B)(3) ("plea of guilty to * * * a violation of any federal or state law regulating the possession, distribution, or use of any drug"); R.C. 4731.22(B)(9) ("[a] plea of guilty to * * * a felony"); and R.C. 4731.29 (to wit 4731.08
"applicant shall furnish evidence satisfactory to the board that [the applicant] is * * * of good moral character").
 {¶ 4} On September 13, 2001, appellant filed a request for hearing pursuant to Ohio Adm. Code 4731-13. The matter came before a Board appointed hearing examiner on October 25, 2001 and December 7, 2001. The hearing examiner recommended permanent denial of appellant's application for licensure in a report and recommendation filed January 4, 2002. After appellant filed objections, the Board convened to consider the matter on February 13, 2002. After discussion of the matter, the Board entered an order adopting the hearing examiner's findings of fact and conclusions of law, thus permanently denying appellant application for licensure. Pursuant to R.C. 119.12, appellant appealed to the court of common pleas. The common pleas court issued a decision filed on October 11, 2002 affirming the order of the Board. The common pleas court decision was journalized in an October 25, 2002 entry. Appellant filed a timely notice of appeal to this court on November 25, 2002. In his appeal, appellant sets forth the following assignments of error:
 {¶ 5} "[I.] The trial court erred in affirming the order of the State Medical Board of Ohio where the appellant was denied due process through the Board's arbitrary application of R.C. § 4731.22(F)(5) to the benefit of the state and to the prejudice of appellant.
 {¶ 6} "[II.] The trial court erred in affirming the order of the State Medical Board of Ohio because the Board's order is contrary to law as the Board prejudicially selected its charges despite requirement of R.C. 4731.22 to charge inability to practice due to mental illness where Board had proof of such impairment.
 {¶ 7} "[III.] The trial court erred in affirming the order of the State Medical Board of Ohio because the Board's order finding a violation of R.C. § 4731.22(A) and (B)(5) is not supported by substantial, probative, and reliable evidence.
 {¶ 8} "[IV.] The trial court erred in affirming the order of the State Medical Board of Ohio because the Board's order is contrary to law as it was the result of improper influence."
 {¶ 9} Documentary evidence and witness testimony at hearing generally established the following facts:
 {¶ 10} Appellant received his medical degree from the University of Missouri in 1997. In June 1997, appellant began an emergency medicine residency at the Cleveland Metrohealth Medical Center ("residency program") in Cleveland, Ohio. On or about December 16, 1997, appellant began to receive psychiatric counseling for depression from Dr. Phillipp Dines. Appellant attended intermittent sessions with Dr. Dines until July 1998.
 {¶ 11} On July 8, 1999, appellant was admitted into Laurelwood Hospital, University Hospitals of Cleveland under the care of Dr. Dines. The admitting diagnosis was major depression. With the exception of a four-day interlude, appellant was hospitalized until July 23, 1999. Before his discharge from Laurelwood, appellant was diagnosed with bipolar disorder. Dr. Dines prescribed psychotropic medications to treat appellant's symptoms of bipolar disorder. Appellant last saw Dr. Dines in October 1999 at which time appellant discontinued use of prescribed medications.
 {¶ 12} Appellant testified he used Ecstasy (a.k.a. Methlenedioxymethamphetamine or MDMA) with increasing frequency between November 1999 and April 2000. (Tr. at 127, 145-146.) He further testified that he experimented with cocaine during this time. Id. In February 2000, Dr. Abdon E. Villalba assumed psychiatric care of appellant and was aware that Dr. Dines had diagnosed bipolar disorder. Dr. Villalba testified that appellant also advised him of the bipolar diagnosis during the first interview.
 {¶ 13} As a condition of his continued participation in the residency program after his admission to Laurelwood, appellant was subject to random drug screening. After arriving late to work one day in April 2000, an undisclosed person in the residency program ordered a drug screening of appellant. On or about April 6, 2000, appellant tested positive for MDMA and was suspended. Two weeks later, appellant resigned from his residency.
 {¶ 14} On April 8, 2000, the Cleveland Police Department executed a search warrant of appellant's apartment. During the search, the police found 115 tablets of MDMA. After undergoing interrogation, appellant cooperated with the police as a confidential informant in an ongoing investigation of drug trafficking.
 {¶ 15} Brenda Harrison, a Board investigator, testified she investigated appellant in response to notice of his April 2000 positive drug screening. Harrison interviewed appellant on July 27, 2000. During the interview, appellant denied voluntarily ingesting Ecstasy prior to the April drug screening and advised Harrison he was participating in an undercover investigation with law enforcement. At the hearing, appellant testified that he had lied to Harrison about his voluntary use of MDMA. (Tr. at 161-162.)
 {¶ 16} On October 30, 2000, appellant filed an application for a certificate to practice medicine and surgery with the Board. In the application, appellant answered "No" in response to question 22, which asked: "[w]ithin the last ten years, have you been diagnosed with or have you been treated for, bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder?" In addition, appellant answered "No" in response to question 25 which asked: "[a]re you currently engaged in the illegal use of controlled substances?" The term "currently" is expressly defined in the application as "recently enough so that the use of drugs may have an ongoing impact on one's functioning as a licensee, or within the past two years." (Emphasis added.)
 {¶ 17} Appellant also answered "Yes" in response to question 4, which asks: "[h]ave you ever resigned from, withdrawn from * * * a medical school, clinical clerkship, externship, preceptorship, residency, or graduate medical education program?" On an attached page entitled "Additional Information — Explanation of Affirmative Answers," appellant provided the following statement concerning his response to question 4. Appellant stated:
 {¶ 18} "In April 2000, I resigned from my residency training program after I had a positive urine drug screen * * * [I contend] the drug was, unbeknownst to me, placed in my drink at a party that I attended the weekend before the scheduled drug screen. I resigned my position in order to * * * rectify the situation. I immediately reported the positive urine drug screen to the [Board]."
 {¶ 19} Appellant signed an Affidavit and Release with the application whereby he acknowledged the "issuance of a certificate to practice medicine * * * will be considered on the truth of the statements and documents contained herein or to be furnished, which if false, can subject me to denial of said certificate."
 {¶ 20} In December 2000, upon recommendation of the Board, appellant entered the Ohio Physicians Effectiveness Program ("OPEP"). OPEP is designed to monitor physicians' chemical dependency issues. In May 2001, OPEP advised the Board that appellant had been compliant with the program and recommended that he pursue a mental health program.
 {¶ 21} On February 14, 2001, at the request of the Board, appellant entered an alcohol-screening program administered by the Addiction Programs of Mahoning County, Inc. ("addiction program"). A discharge summary noted appellant had a history of drug and alcohol use since the age of 16. The program diagnosed appellant's chemical dependency as episodic and did not indicate abuse. When asked if he had a psychiatric diagnosis, appellant informed personnel that he had a history of, and was being treated for, bipolar disorder.
 {¶ 22} On March 29, 2001, appellant was charged in the Court of Common Pleas of Cuyahoga County with knowingly attempting to possess a controlled substance. On April 10, 2001, appellant pleaded guilty to one felony count of attempted drug possession in violation of R.C. 2923.02
and 2925.11. On April 30, 2001, appellant was sentenced to one year of probation, drug and alcohol testing, attendance at Narcotics Anonymous or Alcoholics Anonymous meetings, and continued participation in OPEP.
 {¶ 23} On August 22, 2001, Dr. Howard H. Sokolov advised the Board in a letter ("Sokolov report") of his psychiatric evaluation of appellant conducted pursuant to R.C. 4731.22(B)(19). Sokolov noted appellant's bipolar diagnosis and appellant's difficulty in acknowledging the symptoms of his chemical dependency and psychiatric condition. Sokolov concluded appellant "is able to practice medicine according to acceptable and prevailing standards of care" under the appropriate supervision. (State's exhibit No. 17 at 7.)
 {¶ 24} On September 4, 2001, appellant sent a letter to the Board modifying answers provided in his October 2000 application for licensure. First, in relation to questions 4 and 15, appellant stated, in part, the following:
 {¶ 25} "[I] indicated that I did not know why I tested positive for the drug. Because the investigation that I was involved with is now fully completed, I am able to give full disclosure to the Board. At that time, I had involved myself in the use of MDMA and subsequently was charged with possession of MDMA. Soon thereafter I worked * * * as an undercover for several months. * * * I was told * * * never to reveal that I used MDMA, was arrested for possession or was working for the Cleveland Vice Unit. * * * I was told by the Vice Unit not to tell absolutely anyone."
 {¶ 26} At hearing, Detective Cudo contradicted appellant's modified answers. Detective Cudo testified it was not the practice of the vice unit to instruct informants to withhold disclosure of their drug use, but rather they instructed informants not to discuss their cooperation with the vice unit. Therefore, Detective Cudo stated he never instructed appellant to withhold disclosure of his drug use to the Board.
 {¶ 27} Second, in relation to question 22, appellant stated, in part, the following:
 {¶ 28} "[I] have recently learned, after receiving my medical records and through careful review of those records, that I received a discharge diagnosis of bipolar disorder when I was hospitalized * * * in July 2000. * * * I was later diagnosed with bipolar disorder by another psychiatrist, but never knew that I was hospitalized for bipolar disorder."
 {¶ 29} By letter dated September 12, 2001, the Board gave appellant notice of charges. On September 13, 2001, appellant filed a request for hearing pursuant to Ohio Adm. Code 4731-13-02. On October 15, 2001, appellant requested a subpoena duces tecum be issued to Brenda Harrison with a request for production of all reports relating to appellant. The subpoena duces tecum included discovery of the Sokolov report which was in the possession of Harrison. On October 16, 2001, appellee moved to quash the subpoena contending Harrison's documents were gathered in the process of an investigation and, therefore, were statutorily confidential. On October 22, 2001, the hearing examiner entered an order granting the motion to quash stating that investigative documents were not subject to discovery pursuant to R.C. 4731.22(F)(5). On October 23, 2001, appellant filed a responsive brief arguing Harrison's documents were subject to discovery requests because they were not gathered in relation to the application for licensure.
 {¶ 30} At the administrative hearing, appellee called Harrison to testify as to appellant's conduct and statements prior to his application. Appellant objected to Harrison's testimony on the grounds that it related to information deemed confidential by the hearing examiner. The hearing examiner allowed the testimony, reasoning that if appellee were not permitted to introduce evidence related to the investigation, the Board would be unable to address the underlying conduct that is the subject of the disciplinary action. (Tr. at 93-94.) The hearing examiner admitted Harrison's testimony insofar as it related to allegations found in the September 2001 notice of disciplinary action. Harrison testified that appellant informed her in the July 2000 interview that his ingestion of MDMA was involuntary and he had no prior history of drug use. Appellant later testified that his statements were untruthful.
 {¶ 31} At the hearing, appellant argued his ability to practice medicine is impaired by his bipolar disorder, but that he nevertheless was capable of practicing according to acceptable and prevailing standards of care. In support of this contention, Dr. Villalba testified that appellant was capable of practicing if he followed psychotherapy recommendations and took prescribed medications. Furthermore, Villalba testified that appellant was able to practice medicine without supervision. In rebuttal, appellee offered the report of Dr. Sokolov, who concluded that appellant was able to practice medicine according to acceptable and prevailing standards of care under proper supervision. Appellant waived the opportunity to cross-examine Dr. Sokolov and entered no objection to the admission of the Sokolov report.
 {¶ 32} On January 7, 2002, the hearing examiner recommended the permanent denial of appellant's application. The hearing examiner concluded that appellant's answers on his application constituted "fraud, misrepresentation, or deception in applying for or securing any certificate to practice * * * issued by the board" in violation of R.C.4731.22(B)(5) and 4731.22(A). The officer further found appellant's guilty plea to one felony count of attempted drug possession constituted grounds for refusal to grant a certificate pursuant to R.C. 4731.22(B)(3) and 4731.22(B)(9). Lastly, the hearing examiner found appellant's felony conviction and application answers constituted a "failure to furnish satisfactory proof of good moral character" pursuant to R.C. 4731.29 (to wit: 4731.08).
 {¶ 33} The Board discussed the report and recommendation during a February 13, 2002 open meeting attended by appellant with counsel. The Board considered whether to deny the application, deny the application with conditions, or permanently deny the application. Upon the proposal of an amendment to deny with conditions, the Board sought legal advice from assistant Attorney General Larry Pratt ("AAG"). Acting in his capacity as legal counsel to the Board, the AAG responded to the Board's question of what evidence could be considered in the future if appellant were permitted to reapply for certification. The AAG stated that grounds for denial of appellant's reapplication would be limited to new charges based on new evidence. On February 13, 2002, the Board's entry of order adopted the hearing examiner's report and recommendation and permanently denied appellant's application for licensure.
 {¶ 34} On February 28, 2002, appellant filed a notice of appeal with the common pleas court. The common pleas court's judgment entry of October 25, 2002 affirmed the Board's decision. Appellant filed a timely notice of appeal with this court on November 25, 2002.
 {¶ 35} In reviewing an order of the Board, the common pleas court must affirm if the order is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12; Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. The responsibility of this court, in reviewing an administrative appeal, is limited to determining whether the trial court abused its discretion. Id. Absent an abuse of discretion, this court may not substitute its judgment for that of the Board or the common pleas court on the issues of fact. However, our review of whether the Board's order is in accordance with law is plenary. Id.
 {¶ 36} In his first assignment of error, appellant contends that the common pleas court erred by affirming the Board's order where appellant was deprived of due process. Appellant argues the hearing examiner inconsistently applied R.C. 4731.22(F)(5) by granting the appellee's motion to quash the subpoena duces tecum issued to Board investigator Harrison and then later permitting Harrison to testify and admitting the Sokolov report on rebuttal. Appellant sought the production of all reports relating to appellant in Harrison's possession, including the Sokolov report as referenced in "Respondent's Witness and Document List." (State's exhibit No. 14N.) We find that with the exception of the Sokolov report, the hearing examiner did not err in quashing appellant's subpoena duces tecum in permitting Harrison to testify. In relation to the Sokolov report, while we find the hearing examiner erred in quashing its production, we nevertheless overrule appellant's assignment of error on other grounds.
 {¶ 37} The relevant provision of R.C. 4731.22(F)(5) reads as follows:
 {¶ 38} "Information received by the board pursuant to an investigation is confidential and not subject to discovery in any civil action."
 {¶ 39} First, we disagree with appellant's contention he was deprived of due process because the hearing examiner granted the motion to quash. A fundamental requirement of due process is notice and the opportunity to be heard in an administrative proceeding which denies an individual's certification to practice medicine. See Korn v. Ohio State Medical Bd. (1988), 61 Ohio App.3d 677, 684 (finding due process must be afforded an individual in an administrative proceeding which revokes a license to practice medicine). In other words, due process requires the Board to supply a charged individual with sufficient information enabling that person to challenge adverse evidence and respond to the charges. In re Kralik (1995), 101 Ohio App.3d 232, 237; Froug v. Ohio Bd. of Nursing (Feb. 1, 2001), Franklin App. No. 00AP-523.
 {¶ 40} Appellant's subpoena requested the production of all reports in investigator Harrison's possession, a request that encompassed the Sokolov report. Information contained in the Board's records and obtained pursuant to an investigation "is to be kept confidential at all times and is not, under any circumstances * * * discoverable in a civil action." State Med. Bd. of Ohio v. Murray (1993), 66 Ohio St.3d 527,536, quoted in State ex rel. Wallace v. State Med. Bd. of Ohio (2000),89 Ohio St.3d 431, 434. In Murray, the Ohio Supreme Court applied this statutory language, formerly found in R.C. 4731.22(C)(1), to the adjudication of a disciplinary matter before a Board appointed hearing examiner. The statutory confidentiality "which attaches to its investigative files logically addresses the privacy rights of several groups: investigation witnesses, patients, physicians under investigation, and any other person whose confidentiality right is implicated by a board investigation." In re Kralik, at 236, cited in Wallace, at 435.
 {¶ 41} Appellant contends the documentary evidence he sought in the subpoena duces tecum was not subject to R.C. 4731.22(F)(5) or, alternatively, that the statutory confidentiality had been waived. We disagree. First, the reports in investigator Harrison's possession consisted of information received pursuant to a Board investigation of appellant's April 2000 positive drug screening and appellant's answers provided in the application for licensure. Therefore, documents related to these matters are within the scope of the statute. Second, appellant cannot waive the confidentiality privilege of other persons whose privacy rights are implicated by the Board's investigation of the drug screening. Persons with such a privilege include the residency program personnel who requested, administered and reported appellant's drug screening as well as those who may have provided witness testimonies of appellant's conduct and behavior prior to the screening. Furthermore, appellant did not request, nor is the hearing examiner compelled, to conduct an in camera review of Harrison's investigative documents and release to appellant information which is not confidential. Murray, at 536. The hearing examiner correctly quashed the subpoena duces tecum as it related to reports Harrison received pursuant to her investigation of appellant's drug screening and answers on the application for licensure.
 {¶ 42} Next, we disagree with appellant's contention that the trial court erred by permitting the Board to call investigator Harrison as a witness after granting the motion to quash. Investigators are permitted to testify in Board hearings if they testify to the allegations set forth in the notice letter and do not implicate statutory confidentiality. See Smith v. State Medical Bd. of Ohio (July 19, 2001), Franklin App. No. 00AP-1301 (finding appellant was not deprived of due process because a Board employee refused to testify to details of an investigation). The record in the instant case reveals that the hearing examiner limited Harrison's testimony to the allegations presented in the notice of disciplinary charges. The Board's examination of Harrison was narrowly tailored to address information that arose out of the conversation between appellant and Harrison during the July 2000 interview. Appellant made no showing that Harrison's testimony concerned documentary or confidential information within the scope of R.C.4731.22(F)(5). Moreover, appellant made no showing that Harrison presented information unavailable to appellant prior to and during the hearing. Appellant fully exercised his right to cross-examine the witness and testify in his own defense. Therefore, we find the hearing examiner correctly admitted the Board investigator's testimony.
 {¶ 43} Appellant further argues the hearing examiner improperly quashed the production of the Sokolov report and then later allowed it to be admitted by appellee on rebuttal. Upon introduction of the report by the Board, the hearing examiner afforded appellant's counsel the opportunity to review the report, to object to its admission, and to cross-examine the author of the report during an additional day of hearing. Appellant declined to object to the admission of the report and to cross-examine Dr. Sokolov. Thus, appellant was not deprived of due process because the quashing and subsequent admission of the Sokolov report did not result in prejudice.
 {¶ 44} The relevant provisions of R.C. 4731.22(B)(19) state, in part, the following:
 {¶ 45} "For the purpose of this division, any individual who applies for or receives a certificate to practice * * * shall be deemed to have given consent to submit to a mental or physical examination when directed to do so in writing by the board, and to have waived all objections to the admissibility of testimony or examination reports that constitute a privileged communication."
 {¶ 46} The Board requested Dr. Sokolov's evaluation of appellant pursuant to R.C. 4731.22(B)(19) to determine appellant's ability to practice medicine according to "acceptable and prevailing standards of care." The Sokolov report was, therefore, not subject to appellee's motion to quash because the privacy right implicated by the evaluation was the appellant's and it is statutorily waived under R.C. 4731.22(B)(19). The hearing examiner incorrectly withheld the document from production to appellant. However, appellant was not deprived of due process by his inability to use the Sokolov report in his case-in-chief because appellant had full opportunity to review the report, to examine Dr. Sokolov, and appellant failed to object to the admission of the report at the hearing.
 {¶ 47} The record shows appellee introduced the report on rebuttal to contradict the contention of Dr. Villalba that appellant could practice medicine according to acceptable and prevailing standards of care without Board supervision. Presumably, appellant did not object to the admission of the report because the report supported the argument he could practice medicine according to acceptable and prevailing standards of care. The hearing examiner afforded appellant's counsel the opportunity to review the Sokolov report and offered appellant the opportunity to examine Dr. Sokolov. Appellant waived this opportunity stating the Sokolov report was "adequate" and he did not "want to see an increase in licensure fees for Dr. Sokolov to testify." (Tr. 307.)
 {¶ 48} Furthermore, appellant failed to object to the admission of the report. "[C]onsequently, his failure to object is generally considered to be a waiver of the objection preventing review of the question on appeal." Burlington Northern Air Freight, Inc. v. Bill Walburn Athletic Equip. (June 29, 1989), Franklin App. No. 88AP-434, citing State v. Drago (1981), 65 Ohio St.2d 88. Appellant did not afford the hearing examiner the opportunity to avoid and possibly correct the error and, therefore, we find this point of error to be without merit.
 {¶ 49} Accordingly, we find the hearing examiner erred in quashing of the subpoena only insofar as it relates to the Sokolov report. However, we find any such error did not result in prejudice to appellant because the contents of the report were helpful to appellant's case, the hearing examiner afforded appellant the opportunity to cross-examine Dr. Sokolov, and appellant failed to object to the admission of the report.
 {¶ 50} Appellant's first assignment of error is overruled.
 {¶ 51} In the second assignment of error, appellant argues the common pleas court erred in affirming the Board's order because appellee failed to charge appellant with a violation of R.C. 4731.22(B)(19). Appellant claims the Board was required to have charged appellant under this section based upon evidence of appellant's mental impairment. We disagree.
 {¶ 52} R.C. 4731.22(B)(19) states, in part, the following:
 {¶ 53} "(B) The board * * * shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual * * * for one or more of the following reasons:
 {¶ 54} "* * *
 {¶ 55} "(19) Inability to practice [medicine] according to acceptable and prevailing standards of care by reason of mental illness or physical illness, including, but not limited to, physical deterioration that adversely affects cognitive, motor, or perceptive skills." (Emphasis added.)
 {¶ 56} The Board has the authority to deny appellant's application to practice medicine upon evidence showing a violation of any one of 37 reasons provided by the General Assembly in R.C. 4731.22(B). We do not interpret the statute to require the Board to charge an applicant for certification under (B)(19) in the absence of evidence showing the applicant is unable to practice according to acceptable and prevailing standards of care. Here, however, appellant's ability to practice medicine is not in dispute. Both appellant's treating psychiatrist, Dr. Villalba, and the Board appointed psychiatric examiner, Dr. Sokolov, presented evidence showing appellant is able to practice according to acceptable and prevailing standards of care. (Tr. 251, 270; State's exhibit No. 17.) The only issue in dispute is the level of supervision that would accompany appellant's conditional license to practice medicine. In our review of the plain language of R.C. 4731.22(B)(19), we find the statute does not apply to the facts of the instant case and the Board was under no obligation to charge appellant under this division.
 {¶ 57} "[E]vidence of impairment does not necessarily render an individual unable to practice according to acceptable and prevailing standards of care, and thus we do not construe the statute as requiring the board to proceed under (B)(19) based solely on evidence that a practitioner suffers from a mental illness." Landefeld v. State Medical Bd. of Ohio (June 15, 2000), Franklin App. No. 99AP-612.
 {¶ 58} Appellant effectively argues that this court should interpret R.C. 4731.22(B)(19) as requiring the Board to enforce this division upon the mere presentation of evidence indicating an applicant's mental impairment. Appellant cites no Board rules or case law in support of this argument. We rejected this contention in Landefeld.
 {¶ 59} Based on the foregoing, we conclude the court of common pleas did not err in overruling appellant's assertion that the Board is required to proceed under R.C. 4731.22(B)(19) upon evidence of a mental disorder. Appellant's second assignment of error is overruled.
 {¶ 60} In his third assignment of error, appellant claims the trial court erred in affirming the Board's decision because the finding of violation of R.C. 4731.22(A) and (B)(5) is not supported by substantial, probative, and reliable evidence. Appellant argues his voluntary pattern of conduct that provided the Board with complete disclosure of his bipolar disorder and prior use of controlled substances does not constitute "fraud, misrepresentation, or deception" under the statute. We disagree.
 {¶ 61} We note that our appellate review is limited to whether the court of common pleas abused its discretion in affirming the administrative body's factual findings. R.C. 119.12; Pons, at 621. This court must "accord due deference to the Board's interpretation of technical and ethical requirements of its profession." Id. at syllabus.
 {¶ 62} R.C. 4731.22(B)(5) defines a "false, fraudulent, deceptive, or misleading statement" as:
 {¶ 63} "[A] misrepresentation of fact * * * likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived." (Emphasis added.)
 {¶ 64} In In re Wolfe (1992), 82 Ohio App.3d 675, we concluded that evidence of intent to mislead was necessary to prove a violation of R.C. 4731.22(A). Id. at 687-688. In Rajan v. State Med. Bd. of Ohio (1997), 118 Ohio App.3d 187, we extended the same burden of proof to alleged violations of R.C. 4731.22(B)(5). Id. at 194. Intent "may be inferred from the surrounding circumstances, e.g., as when a licensee clearly knows something, which he failed to disclose in response to a direct question." Hayes v. State Med. Bd. (2000), 138 Ohio App.3d 762,770, quoting Krain v. State Med. Bd. of Ohio (Oct. 29, 1998), Franklin App. No. 97APE08-981. Upon review of the record, we conclude substantial, probative, and reliable evidence supported the Board's finding that appellant engaged in a pattern of intentional misrepresentation in his communications with the Board.
 {¶ 65} The factual conclusions of the hearing examiner focused on the trustworthiness of appellant's claims that his incorrect answers on the application for licensure were a result of mental impairment. Appellant also attempted to show that he was dedicated to recovery. The hearing examiner cited a series of statements made by appellant that were contradicted by witness and appellant's own testimony to arrive at his conclusion that appellant's conduct constituted a pattern of intentional misrepresentation.
 {¶ 66} First, in his October 2000 application for licensure, appellant denied any current use of drugs. Appellant argues he did not answer the question correctly because he did not understand the meaning of the term "currently" encompassed his drug use 6 to 10 months prior to completion of the application. This assertion is contradicted by the application for licensure itself, which expressly and unequivocally defines the term "currently" immediately prior to question 25 to include use "within the past two years."
 {¶ 67} Second, appellant failed to disclose his voluntary drug use to a Board investigator during a July 2000 interview or to his treating physician, Dr. Villalba. During the interview and psychiatric counseling, appellant contended the ingestion of MDMA that resulted in the positive drug screening was involuntary. Appellant's own testimony at the hearing contradicts his prior statements concerning his history of drug use. In addition, the discharge summary from the Mahoning County Addiction Program indicated appellant had a history of drug usage since the age of 16. In his September 2001 letter to the Board, appellant claims that the Cleveland police advised him not to disclose his drug use to anyone. However, Detective Cudo of the Cleveland police testified he never discussed appellant's drug use and it is not the practice of the police to advise informants about their drug use. Appellant's credibility was further brought into doubt by his failure to disclose his bipolar condition to the Board in the application for licensure.
 {¶ 68} Appellant answered "No" to question 22, which asked whether he had been treated for or diagnosed with bipolar disorder. In his September 2001 letter to the Board, appellant claims he only "recently learned" of his bipolar diagnosis after a review of his medical records. However, the testimony of appellant's treating physicians, Dr. Dines and Dr. Villalba, indicate appellant was made fully aware of his diagnosis of, and treatment for, bipolar disorder well in advance of his application for licensure. In addition, appellant admitted to Dr. Sokolov during his examination that appellant had discussed his bipolar diagnosis with Dr. Villalba in February 2000, seven months prior to completing the application.
 {¶ 69} In our review of the record, we find that, in his communications with the Board, appellant has consistently failed to disclose material facts concerning his substance abuse, mental health, and the circumstances surrounding his incorrect answers in the application for licensure. Appellant's answers and communications constitute more than technical inaccuracies, but rather indicate an intent to mislead the members of the Board. We note the seriousness of the charges considered by the Board in this matter. The criteria for denying a physician's application for licensure relate directly to the state's interest in protecting the public from a physician whose conduct has fallen below standards set forth by the General Assembly. See Bouquett v. Ohio State Med. Bd. (1997), 123 Ohio App.3d 466, 473 (holding the Board's refusal to reinstate a physician's license is a valid exercise of police power). The trustworthiness of a physician is a central and fundamental component of a doctor-patient relationship.
 {¶ 70} Under R.C. 4731.22(B)(3) and (B)(9), the Board had sufficient grounds to deny appellant's application solely on the grounds that he pled guilty to a felony count of drug possession. Thus, it was well within the Board's discretion to determine that appellant's misrepresentations on his application and during the Board's investigation represented an aggravating factor that weighed in support of permanent denial of the application. For the foregoing reasons, we conclude the Board's finding that appellant's conduct constituted a pattern of intentional misrepresentation in violation of R.C. 4731.22(A) and (B)(5) is supported by reliable, probative and substantial evidence. Appellant's third assignment of error is overruled.
 {¶ 71} In the fourth assignment of error, appellant argues the Board's decision is contrary to law because the Board elicited the comments of AAG Larry Pratt regarding a legal question during the February 13, 2002 meeting to consider the hearing examiner's report and recommendation. Appellant contends that the Board's consideration of the AAG's comments is improper under Ohio Adm. Code 4731-13-01 and resulted in prejudice. We disagree.
 {¶ 72} Ohio Adm. Code 4731-13-01(J) provides that no Board member "shall initiate or consider ex parte communications concerning a pending or impending adjudicatory proceeding." However, in such adjudicatory proceedings, the Board has statutory authority to confer with counsel, the Ohio Attorney General, concerning pending, or impending, legal proceedings. See R.C. 121.22(G)(3) (providing an exception to the Sunshine Law permitting a public body to confer with counsel concerning court actions).
 {¶ 73} In the instant matter, the Board's communication with the AAG was not an improper ex parte communication. The AAG answered legal questions in an open meeting attended by appellant and counsel. During the meeting, the Board afforded appellant the opportunity to speak on his behalf. The minutes of the meeting recorded the communication between the AAG and the Board. The AAG answered the Board's questions in his capacity as general counsel, not as an advocate for the state. The AAG present at the meeting, Larry Pratt, did not prosecute this matter before the Board or have an interest in the resolution of the matter. Accordingly, while the AAG answered questions on points of law, he refrained from advising the Board on a course of action. Upon review of the record, we find appellant's claim that the AAG's statements to the Board constitute an ex parte communication is without merit. For the foregoing reasons, we overrule appellant's fourth assignment of error.
 {¶ 74} We overrule appellant's four assignments of error and affirm the judgment of the court of common pleas.
Judgment affirmed.
BRYANT and WATSON, JJ., concur.